UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT LANZA,

                                        Petitioner,

                v.                                              9:04-CV-0678
                                                                        (LEK)

DONNA LEWIN, Acting Superintendent,

                                        Respondent.
_____

APPEARANCES                                  OF COUNSEL:

For the Petitioner:

ROBERT LANZA
50 Carmichael Street
Amsterdam, New York 12010

For the Respondent:

HON. ANDREW M. CUOMO              STEVEN H. SCHWARTZ, ESQUIRE
Office of the Attorney General           Ass't Attorney General
The Capitol
Albany, New York 12224

LAWRENCE E. KAHN
U.S. District Judge


                    **DECISION AND ORDER**

I.      **Introduction**

        Petitioner Robert Lanza, a former New York State prison inmate as a result of a 1999

conviction on two counts of third degree criminal sale of a controlled substance (N.Y. PENAL

LAW § 220.39(1)), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds

that (1) the indictment was defective; (2) the trial court improperly denied his motion to vacate

his conviction pursuant to New York's Criminal Procedure Law ("CPL") § 440.10 in violation of

his right to due process; (3) the evidence was insufficient; and (4) the trial court committed

several errors resulting in the denial of a fair trial.  Dkt. No. 1 at 5-6; Dkt. No. 10, Traverse at 4-

23.  For the reasons that follow, the petition is **DENIED**.


II.     <u>Background</u>

   A.     <u>Facts</u>

   According to the testimony adduced at trial, Petitioner sold crack cocaine to Columbia

County Sheriff Deputy Wendy J. Guntert on March 17 and March 19, 1999.  <u>See</u> Transcript of

Trial of Robert Lanza ("Trial Tr.") at R285-306.[1]  Senior Investigator Frederick Kane, assigned

to the Columbia County Drug Task Force, supervised both transactions.

   Prior to the March 17, 1999 transaction, Deputy Guntert met with Investigator Kane, who

showed her a photograph of Petitioner.  He identified Petitioner by name, and told Guntert that

Petitioner was the person she would meet that day to purchase crack cocaine.  Trial Tr. at R 218-

20, 287-88.  Deputy Guntert and Investigator Kane each recognized Petitioner from prior police

contact.  <u>Id.</u>  Guntert was given $100.00 in buy money[2] and a body wire.  Guntert and a

confidential informant went to a parking lot of a grocery store, and the informant contacted

Petitioner by phone.  The informant ordered two pieces of crack cocaine, and asked Petitioner to

meet him in the parking lot.  <u>Id.</u> at R313-14.

---

   [1] "R" followed by a number refers to the pages of the hearing and trial transcripts included as part of the Record on Appeal presented to the Appellate Division.  Dkt. No. 6, Ex. 17.  The type-written numbers appear on the bottom center of each page.

   [2] "Buy money" refers to money used in a controlled narcotics purchase.  The serial numbers of buy money are recorded for identification.  Trial Tr. at R288.

Petitioner parked his car next to Deputy Guntert's van.  Trial Tr. at R289-90.  Deputy Guntert was sitting inside the passenger side sliding doors of the van.  Id.  Petitioner exited his vehicle and the informant introduced Petitioner and Guntert.  Petitioner sat next to Guntert and opened a metal cigarette lighter.  He poured out ten individually wrapped pieces of crack cocaine, picked out two of them, and handed them to Guntert in exchange for $100.00.  Id. at R290-94.

Deputy Guntert and the informant met with Petitioner again on March 19, 1999 in the same grocery store parking lot.  This time, Petitioner got into the front passenger seat of Deputy Guntert's vehicle and handed her two pieces of crack cocaine in exchange for $100.00.  Trial Tr. at R297-302.

Investigator Kane and Sergeant Paul Knott of the Columbia County Sheriff's Department conducted surveillance of both transactions.  They recorded the conversations between Deputy Guntert and Petitioner on audiotapes and also made a videotape of the March 19 transaction. Trial Tr. at R227-31, 237-41, 243-45, 258.

Deputy Guntert met with Investigator Kane within minutes of each purchase and turned the crack cocaine over to him.  Trial Tr. at R295-96, 318.  Investigator Kane field tested the items and then sealed them with tape.  Id. at R224-25.  Guntert initialed and dated each piece on the tape.  Id. at R224, 295.  Investigator Kane then placed the cocaine in sealed evidence bags, labeled them, and assigned each bag a specific case number unique to Petitioner.  Id. at R226-27, R247-49.  Investigator Kane took the evidence bags to the task force office, where they were locked in a safe.  On March 23, 1999, Investigator Kane removed the evidence bags and transported them to the New York State Police Crime Lab for forensic testing.  Id. at R248-50. At the Crime Lab, Investigator Kane handed the bags to the receiving technician, who placed the

bags into larger bags, sealed them, and gave Kane a receipt.  Id. at R249.

Senior Forensic Chemist Patricia C. Rose was assigned to test the substances delivered to the lab on March 23, 1999 by Investigator Kane.  Trial Tr. at R264-266.  She signed the evidence out of the Crime Lab's inner vault on April 21, 1999, took it to her work area, and placed it in a locked box to which only she had the combination.  Id. at 266-68.  On or about May 5, 1999, Rose performed three chemical tests on the items recovered on March 17 and 19 in order to determine their molecular and chemical content.  All three tests indicated the presence of cocaine.  Id. at R267-69, 275.  Infared tests performed on items from each date showed "a fingerprint" of "cocaine freebase," which is "known in the street as crack."  Id. at R269, 275.

### B.       State Court Proceedings

On July 13, 1999, Petitioner was indicted on two counts of third degree criminal sale of a controlled substance (N.Y. PENAL LAW § 220.39(1)) and two counts of seventh degree criminal possession of a controlled substance (N.Y. PENAL LAW § 220.03).  Dkt. No. 6, Ex. 1, Indictment.  On September 24, 1999, a combined Wade[3]/Sandoval/[4]Ventimiglia[5] hearing was held.  The court

---

[3]   United States v. Wade, 388 U.S. 218 (1967).  The purpose of a Wade hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive.  See Blas v. Herbert, No. 02 Civ. 6257, 2003 WL 22480093, at *3 n. 2 (S.D.N.Y. Oct. 21, 2003).

[4] People v. Sandoval, 314 N.E.2d 413 (1974).  A Sandoval hearing is an evidentiary hearing held in state court to determine whether, if the defendant testifies, his prior convictions or bad acts may be admitted to impeach his credibility. See Brown v. Duncan, No. 00-CV-290, 2006 WL 1977469, at *19 (N.D.N.Y. Jul. 11, 2006) (Sharpe, D.J., adopting Report - Recommendation of Lowe, M.J.).

[5]   People v. Ventimiglia, 420 N.E.2d 59 (1981).  A Ventimiglia hearing is held to determine the admissibility "of evidence of prior conduct, other than direct proof of a defendant's prior crime, which tends to implicate the defendant in the commission of the charged crime."

(continued...)

also conducted an audibility hearing the same day to determine the admissibility of the two audiotapes and the videotape taken during the surveillance of the narcotics transactions.  Dkt. No. 6, Ex. 9; Ex. 17, Hearing Tr. at R103-181.  After hearing the testimony of Investigator Kane and Sergeant Knott, and listening to the tapes, the trial court found that the tapes were admissible because they were "sufficiently intact and audible to go to a jury."  Dkt. No. 6, Ex. 17 at R155.  The court noted that there were no mechanical errors or gaps in the recordings, that they accurately reflected the depicted events as they unfolded, and that the entirety of each transaction was recorded from "beginning to end."  Id. at R153-54.  The court found that the video clarity was "excellent" and that any audibility problems with the videotape were moot because the audio tape of the same transaction was "quite audible."  Id. at R154.

At the conclusion of the Wade portion of the hearing, the trial court held that there had been no improper procedures used in identifying Petitioner.  The only photograph in question was that shown to Deputy Guntert on March 17.  The court noted that Guntert recognized Petitioner from police contact on March 16, that she had an "excellent ability to see" Petitioner during the March 17 transaction that lasted six minutes, that viewing the photograph did not "taint or undermine" her ability to recognize and identify Petitioner, and that her ability to identity Petitioner was based upon her own observations.  Dkt. No. 6, Ex. 17 at R172-73.  Finally, the court ruled on the admissibility and use of certain prior criminal convictions and uncharged crimes, and denied the prosecutor's request to introduce evidence of a drug transaction allegedly committed by Petitioner on March 16, 1999.  Id. at R173-81.

---

[5](...continued)
Chanowitz v. Miller, No. 05-CV-120, 2008 WL 2323388, at *2, n.3 (N.D.N.Y. Jun. 2, 2008)(Scullin, S.J.).

A jury trial was held on October 4 and 5, 1999.  Trial Tr. at R189-343.  The jury found Petitioner guilty of both counts of criminal sale of a controlled substance.  Id. at R418-19.  On November 5, 1999, Petitioner was sentenced as a predicate felon to serve an indeterminate term of eight to sixteen years on each count to run concurrently.  Dkt. No. 6, Ex. 12; Ex. 17, Sentencing Tr. at R436-443.

On November 21, 2000, Petitioner filed a Notice of Motion and Affidavit in which he asked the trial court to inspect the grand jury minutes in camera to determine whether the grand jury proceeding was defective and requested an Order directing that a transcript of the grand jury proceedings be provided to him for inclusion in the record on appeal.  Dkt. No. 6 at Ex. 14.  In a Decision and Order dated January 11, 2001, the trial court denied the motion, stating that it had already reviewed the grand jury minutes in determining Petitioner's pre-trial omnibus motion and "upheld the subject determination."  Id. at Ex. 16.

Petitioner filed his first CPL §440.10 motion on or about May 22, 2001.  Dkt. No. 6, Ex. 19.  Petitioner alleged that (1) the trial court lacked jurisdiction over his case because the grand jury proceedings were defective; and (2) the prosecutor misrepresented evidence to the grand jury such that the integrity of the proceedings was impaired.  Id.  The motion centered around Petitioner's argument that Crime Lab reports were not properly certified at the time of the grand jury presentation and, as a result, the evidence presented at grand jury regarding the identity of the substance recovered from him was insufficient.  The prosecutor opposed the motion in an affidavit dated June 7, 2001.  Id. at Ex. 21.

In a decision dated July 27, 2001, the trial court denied the motion.  Dkt. No. 6 at Ex. 22. The court explained that its review of the grand jury minutes revealed that the Crime Lab reports

-6-

in question were recited therein as being "New York State Police Crime Laboratory Reports, each with attached certification." Id. at 2. The court did not have the grand jury exhibits before it when it decided Petitioner's omnibus pre-trial motion, and relied upon that information. Id. The court further noted Petitioner's assertion that the only certifications he could find were dated after the conclusion of the grand jury proceedings. Id. The court assumed, *arguendo*, that Petitioner was correct that the lab reports lacked the requisite certifications when they were submitted to the grand jury, but nonetheless found that "any claim pertaining to alleged insufficiency of Grand Jury evidence is foreclosed" because Petitioner was convicted "upon legally sufficient evidence" after trial. Id. The court also noted that there was other testimony before the grand jury, including that of the undercover officer regarding the purchase of what was represented as and understood to be crack cocaine, and that items were field tested. Id. at 3. In light of that evidence, the court concluded that there had been no jurisdictional defect. Id. Petitioner appealed, leave was granted, and the appeal was consolidated with Petitioner's direct appeal of his conviction. See Lanza, 749 N.Y.S.2d at 618.

On direct appeal, Petitioner re-asserted the claims presented in the CPL § 440 motion and further argued that (1) the chain of custody was insufficient to show that the substance sold to Deputy Guntert was the same substance tested at the Crime Lab; (2) the trial court erred when it denied the CPL § 440 motion; (3) Petitioner was not given an agency defense; (4) the audio and video tapes of the transactions were improperly admitted into evidence; (5) the trial court infringed upon Petitioner's right to a fair trial and the right to confront his accusers when it interfered with cross-examination, injected facts not in the record, and made erroneous evidentiary rulings; and (6) the sentence was excessive. Dkt. No. 6, Ex. 24.

-7-

The Appellate Division, Third Department affirmed, finding that evidence presented at trial was "sufficient to establish a complete chain of custody." People v. Lanza, 749 N.Y.S.2d 618, 620 (N.Y. App. Div., 3d Dep't. 2002). The court rejected Petitioner's argument that references in the Crime Lab reports to "powder" demonstrated that the substance tested could not be the same substance Petitioner sold to Deputy Guntert, which had the appearance of crack cocaine, because the chemical analysis of the substance revealed that it was crack cocaine. Id. Accordingly, the discrepancy based upon the term "powder" was relevant to the weight of the evidence and not its admissibility. Id. For the same reason, the court rejected Petitioner's arguments that the weight of the items submitted by Investigator Kane was different than the weight listed on the lab reports. It noted that Petitioner argued this theory to the jury, which rejected it. Id. at 621. The court concluded that any error in the admission of the audio and video tapes was harmless in light of the testimony of the undercover officer and the "weight and nature of the proof of defendant's guilt without" them. Id. The court further found no evidence to support an agency defense, and rejected Petitioner's claim that the sentence was excessive. Id. Finally, the court ruled that, based upon its review of the record, there was no merit to Petitioner's "claims that the Crime Lab reports submitted to the grand jury were not certified." Id. Petitioner's remaining arguments were "considered and rejected." Id. The New York Court of Appeals denied leave on May 29, 2003 (People v. Lanza, 793 N.E.2d 419 (N.Y. 2003), and denied reconsideration on June 23, 2003. People v. Lanza, 795 N.E.2d 46 (N.Y. 2003). See Dkt. No. 6, Exs. 28-29.

On or about August 13, 2003, Petitioner filed a second CPL § 440 motion. Dkt. No. 6, Ex. 31. Petitioner again argued that the evidence presented at the grand jury was defective

because the Crime Lab reports were not properly certified at the time they were presented to the grand jury.  Id.  He further argued that the "submission of the alleged uncertified Crime Lab reports constituted prosecutorial misconduct, divested [the trial court] of jurisdiction, prevented the prosecution from providing the Grand Jury with adequate legal instructions and, further, violated [Petitioner's] due process rights under the respective constitutions of the United States and New York State."  Dkt. No. 6, Ex. 33 at 2, n. 1.  In a Decision and Order dated September 16, 2003, the trial court denied the motion pursuant to CPL §440.10(2)(a) because the "linchpin" of the motion was that the lab reports were uncertified at the time of grand jury, and the Appellate Division had rejected that argument on the merits.  Id. at 2-3.  The court further noted that each of the arguments in the motion appeared on the record and "could have been addressed" on appeal.  Id. at 3 (citing CPL §440.10(2)(c)).  The Appellate Division denied leave to appeal on December 8, 2003.  Dkt. No. 6, Ex. 34.  The New York Court of Appeals dismissed Petitioner's application for leave on February 4, 2004 (Lanza, 808 N.E.2ed 1287 (2004)), and denied reconsideration of that dismissal on April 16, 2004.  Lanza, 811 N.E.2d 43 (2004). See Dkt. No. 6, Exs. 36-39.

### C.  Proceedings in This Court

Petitioner filed his Petition for a writ of habeas corpus on June 14, 2004.  Dkt. No. 1. On November 8, 2004, the Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed a response and memorandum of law in opposition to the Petition, along with the relevant state court records.  See Dkt. No. 6.  Petitioner filed a Traverse on January 27, 2005.  Dkt. No. 10.

## II.    Discussion

**A. Lanza's Release from Prison**

According to publicly available records maintained by the New York State Department of Correctional Services ("DOCS"), and Petitioner's Notice of Change of Address letter, Petitioner was released from state custody on the conviction at issue on November 14, 2005.  See http:// nysdocslookup.docs.state.ny.us; Dkt. No. 11, Notice of Change of Address letter.  It also appears that Petitioner has now completed his sentence.  According to the DOCS website, Petitioner had a "Parole Board Discharge Date" of July 9, 2007, which "indicates that the parolee has been discharged from parole supervision before the maximum expiration date or the maximum expiration date for parole supervision.  The parolee's sentence is deemed completed as of this date."  See http:// nysdocslookup.docs.state.ny.us, Inmate Information Data Definitions.

Since Petitioner was released from custody and apparently completed his sentence pending the disposition of his habeas petition, the Court has not been briefed by the parties on whether it lacks jurisdiction over the Petition, or whether it has been rendered moot.  However, "[w]hether a federal court has subject matter jurisdiction is a question that 'may be raised at any time . . . by the court *sua sponte*.'"  McGinty v. New York, 251 F.3d 84, 90 (2d Cir. 2001) (quoting Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700 (2d Cir. 2000)).

Habeas corpus relief is available to a state prisoner if he is "in custody pursuant to the judgment of a State court."  28 U.S.C. § 2254(a).  Regardless of a petitioner's subsequent release, it is within the jurisdiction of a federal court to issue a writ of habeas corpus if the petitioner was "in custody" at the time his application for relief was filed.  Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968).  Petitioner was in custody at the time he filed his Petition, and thus, the Court retains jurisdiction over the Petition.  Id.; see Stephens v. Superintendent, No. 04-CV-1443, 2008

WL 755278, at *3 (N.D.N.Y. Mar. 19, 2008) (McAvoy, S.J., adopting Report-Recommendation of Bianchini, M.J.) (retaining jurisdiction over petition after the petitioner's release because it was filed while the petitioner was incarcerated).

Subject matter jurisdiction, however, is limited by Article III, Section 2 of the United States Constitution to cases that present a "case or controversy." Spencer v. Kemna, 523 U.S. 1, 7 (1998); Baur v. Veneman, 352 F.3d 625, 631-32 (2d Cir. 2003). Habeas petitioners no longer in custody and whose sentences have expired must demonstrate the existence of a "concrete and continuing injury" or some " 'collateral consequence' of the conviction" in order for a petition to be granted. Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Carafas, 391 U .S. at 237-38).

The Supreme Court has stated that a challenge to the underlying conviction itself carries the presumption that a collateral, adverse consequences exists. Spencer, 523 U.S. at 12 ("[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'") (quoting Sibron v. New York, 392 U.S. 40, 55 (1968)). That is true "even after the expiration of the sentence that was imposed as a result of the conviction." Casler v. United States, No. 04-CV-1157, 2005 WL 3088699, at *3 (N.D.N.Y. Nov. 17, 2005) (Mordue, C.J.) (citing Spencer and Sibron); See Evitts v. Lucey, 469 U.S. 387, 391 n. 4 (1985) (habeas petition not moot despite the expiration of the petitioner's sentence and despite the fact that "his civil rights, including suffrage and the right to hold public office, [had been] restored" because "respondent has not been pardoned and some collateral consequences of his conviction remain, including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding. . . ."); Benton v. Maryland, 395 U.S. 784, 791 (1969) ("[B]oth of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial.").

-11-

Whether Petitioner will actually suffer these consequences is irrelevant, as is the fact that

Petitioner has a prior felony conviction.  Benton, 395 U.S. at 790-91; Sibron, 392 U.S. at 56 ("we

see no relevance in the fact that Sibron is a multiple offender.").  Additionally, the Supreme

Court has "expressed its disapproval of requiring a citizen to suffer a legal disability based on a

prior conviction before enlisting federal aid to attack the validity of that conviction."  Velez v.

People of the State of New York, 941 F. Supp. 300, 309 (E.D.N.Y. 1996) (quoting Sibron, 392

U.S. at 57).

Petitioner's Petition does not appear to have been rendered moot by his release from

prison and the completion of his sentence, since he is challenging the underlying conviction and

"collateral consequences can be presumed when challenging a felony conviction[.]"  Cobos v.

Unger, 534 F. Supp. 2d 400, 403 (W.D.N.Y. Feb. 14, 2008) (citing Sibron, 392 U.S. at 54-56).

See Spencer, 523 U.S. at 12; DeFayette v. Superintendent, No. 05-cv-722, 2008 WL 755822, at

*1 n. 1 (N.D.N.Y. Mar. 19, 2008) (Sharpe, D.J., adopting Report - Recommendation of Peebles,

M.J.) (citing Spencer and Sibron). The Court will therefore address the Petition.

### B.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state

court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the United

States; or (2) was based on an unreasonable determination of the facts in light of the evidence

-12-

presented in the State court proceeding.[6]  Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006),

cert. denied 127 S. Ct. 1267 (2007); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005) (citing

28 U.S.C. § 2254(d)), cert. denied, 546 U.S. 884 (2005).  AEDPA also requires that in any such

proceeding "a determination of a factual issue made by a State court shall be presumed to be

correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also DeBerry, 403 F.3d at 66;

Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it

"reaches a result opposite to the one reached by the Supreme Court on the same question of law

or arrives at a result opposite to the one reached by the Supreme Court on a 'materially

indistinguishable' set of facts."  Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (citing

Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  A federal habeas court may only grant the

writ under the "unreasonable application" clause of the section when the state court's decision

"identifies the correct rule of law but applies that principle to the facts of the petitioner's case in

an unreasonable way."  Earley, 451 F.3d at 74 (citing Williams, 529 U.S. at 413).  A federal court

engaged in habeas review is not charged with determining whether the state court's

determination was merely incorrect or erroneous, but instead whether such determination was

"objectively unreasonable."  Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d

303, 315 (2d Cir. 2001).  Objectively unreasonable means "'some increment of incorrectness

---

[6] "Clearly established federal law" refers only to the holdings of the Supreme Court, and "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, No. 04-pr-6665, 2008 WL 3010107, at *3 (2d Cir. Aug. 6, 2008) (citing Williams, 529 U.S. at 412 and Carey v. Musladin, 127 S. Ct. 649, 652-53 (2006)).

beyond error'" is required in order to grant a federal habeas application.  <u>Earley</u>, 451 F.3d at 74

(quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)).

### C.    Defects in Grand Jury Proceedings

Petitioner first argues, as he did in the state courts, that during grand jury proceedings, the

Crime Lab reports were not properly certified at the time they were presented to the grand jury.

Petitioner further alleges that the prosecutor (1) permitted a "false entry" to be made into the

grand jury record that the reports were, in fact, certified; (2) failed to give the grand jury

appropriate legal instructions; and (3) made false statements that the reports were certified in the

People's response to his omnibus motion seeking to dismiss the indictment.  Petitioner argues

that the indictment was thus defective, and the trial court therefore lacked jurisdiction.  Dkt. No.

1, Pet. at 5; Dkt. No, 10, Traverse, Memorandum of Law ("Mem.") at 4-6.

Alleged errors in a state grand jury proceeding, including claims that evidence was not

properly certified for presentation to the grand jury and that the evidence presented to the grand

jury was insufficient, are not cognizable on federal habeas review.  <u>Lopez v. Riley</u>, 865 F.2d 30,

33 (2d Cir. 1989) ("The particular claims of impropriety before the grand jury in this case

concern the sufficiency of the evidence, a failure to develop exculpatory evidence by the

prosecutor, the presentation of prejudicial evidence and error in explaining the law" which were

cured by petitioner's conviction by a "petit jury" and, therefore, were not cognizable on habeas

review); <u>Cadilla v. Johnson</u>, 119 F. Supp. 2d 366, 371-72 (S.D.N.Y. 2000) ("Petitioner's claim

that hearsay in the grand jury proceeding undermined the legal sufficiency of the indictment" is

"not a constitutional claim that is cognizable under federal habeas review, because petitioner was

convicted by a jury after a trial."); <u>Spulka v. Walker</u>, No. 97 Civ. 1879, 1998 WL 274287, at *2

(S.D.N.Y. May 27, 1998) (petitioner's claim that a laboratory report lacking proper certification was erroneously submitted to the grand jury was without merit, because guilty verdict cured any defect in the grand jury proceeding); Hogan v. Ward, 998 F. Supp. 290, 294 (W.D.N.Y. 1998) ("the right to have evidence properly certified for presentation to a grand jury is a matter of New York State law and as such is not reviewable on a petition for federal habeas corpus.").

The same is true of Petitioner's claims that the prosecutor engaged in misconduct during the grand jury proceedings, that there was error in the instructions given to the grand jury, and that the trial court lacked jurisdiction over him because the indictment was allegedly obtained using hearsay.  United States v. Mechanik, 475 U.S. 66, 70 (1986) ("any error in the grand jury proceeding connected with the charging decision" was rendered harmless where the defendant was convicted after a jury trial); Lopez, 865 F.2d at 33, Campbell v. Poole, 555 F. Supp. 2d 345, 367-68 (W.D.N.Y. 2008) (claim that prosecutor lied to the grand jury was not cognizable on habeas review where petitioner was found guilty after a jury trial); Reid v. Phillips, No. 04 Civ. 1338, 2004 WL 1920218, at *4 (S.D.N.Y. Aug. 26, 2004) (petitioner's claim that the trial court "lacked jurisdiction over him, apparently because his grand jury indictment was allegedly obtained through the presentation of hearsay and false evidence" was not a basis for habeas relief because, "[r]egardless of whether the indictment was defective, it is well established that a petit jury's guilty verdict renders any errors by the grand jury harmless[.]"); People v. Miles, 632 N.Y.S.2d 74, 75 (N.Y. App. Div., 1st Dep't 1995) ("The hearsay nature of the lab report presented to the grand jury as proof that the substance defendant was charged with selling and possessing contained cocaine did not render the indictment jurisdictionally defective."), lv. denied 666 N.E.2d 1070 (N.Y. 1996).

Even if there were error, Petitioner's subsequent conviction by a jury cured any arguable defects in the indictment process "because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt." Montalvo v. Annetts, 02 Civ. 1056, 2003 WL 22962504, at *17 (S.D.N.Y. Dec. 17, 2003); see Mechanik, 475 U.S. at 70 ("the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."); Davis v. Mantello, 42 Fed. Appx. 488, 490-91 (2d Cir. 2002) (summary order) ("Claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." ), cert. denied 538 U.S. 986 (2003).  The claims in Ground One of the Petition are therefore dismissed.

### D.   Trial Court Improperly decided Petitioner's First CPL § 440 motion

Petitioner next asserts that the trial court improperly denied his first section 440 motion (Ex. 19) in violation of his due process rights.  Specifically, Petitioner claims that the court failed to address issues of prosecutor misconduct during grand jury proceedings, refused to treat his motion as *pro se*, admitted to relying on misrepresentations made by the prosecutor during grand jury in deciding trial motions, and improperly denied an evidentiary hearing.  Dkt. No. 6, Ex. 19. Petitioner raised these arguments on direct appeal and they were rejected.  Lanza, 749 N.Y.S.2d at 621 (stating that the "remaining arguments, . . . have been considered and rejected.").  That determination is entitled to AEDPA deference.  See Velazquez v. Poole, No. 04-CV-478, 2007 WL 3240550, at *19 (E.D.N.Y. Oct. 30, 2007) ("The Appellate Division's conclusion that petitioner's remaining claims were without merit, including those relating to alleged prosecutorial misconduct, qualifies as an adjudication on the merits for purposes of AEDPA

deference.") (citing <u>Sellan</u>, 261 F.3d at 311-12) (internal quotations omitted).

State prisoners have no federal constitutional right to post-conviction proceedings in state court.  <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987).  Thus, to the extent that Petitioner is challenging alleged procedural errors by the trial court in deciding his section 440 motion, including his claim that the court denied the motion without holding a hearing, those claims are not cognizable on habeas review.  <u>Ferrer v. Superintendent</u>, No. 05-CV-1010, 2008 WL 2967633, at *11 (N.D.N.Y. Jul. 25, 2008) ("[f]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.") (internal quotation omitted); <u>see</u> <u>Parker v. New York</u>, No. 05 Civ. 3347, 2006 WL 864272, at *5 (S.D.N.Y. Apr. 5, 2006) ("procedural errors in state post-conviction proceedings are not cognizable on federal habeas review."); <u>Jones v. Duncan</u>, 162 F. Supp. 2d 204, 217 (S.D.N.Y. Apr. 3, 2001) (stating that "habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings", and denying habeas relief on claim that trial court failed to hold an evidentiary hearing on post-conviction motions).  Further, the Appellate Division granted Petitioner leave to appeal the trial court's denial of his section 440 motion, and that appeal was consolidated with Petitioner's direct appeal.  Petitioner raised and fully litigated each of these claims regarding the denial of his section 440 motion on appeal.  "[T]hus he was not prejudiced by any alleged violation [of state procedural rules]."  <u>Parker</u>, 2006 WL 864272, at *5.

In any event, Petitioner's claims are without merit.  Under New York law, a trial court may deny a section 440.10 motion without a hearing if the moving papers do not allege any ground constituting legal basis for the motion.  <u>See</u> CPL § 440.30(4)(a).  Here, the trial court summarily denied the motion after finding that the allegations therein did not warrant relief.  Dkt.

No. 6, Ex. 22.  Its actions were based on, and in compliance with, state statutory law.  The trial

court's failure to hold a hearing before denying Petitioner's section 440 motion is thus

insufficient to constitute a denial of Petitioner's constitutional rights.

Petitioner's next argument, that the trial court admitted to relying on a notation in the

grand jury minutes that the lab reports had been certified when it denied his motion to dismiss

the indictment, and that its reliance was improper, is equally unavailing.  The Appellate Division

specifically rejected the premise upon which this claim is based - that the lab reports were

uncertified - stating "[o]ur review of the record also reveals the lack of merit in [Petitioner's]

claims that the Crime Lab reports submitted to the grand jury were not certified."  Lanza, 749

N.Y.S.2d at 621.  Thus, the trial court could not have improperly relied upon a notation that the

reports were certified.

Contrary to Petitioner's assertion, the trial court did address his claims of prosecutor

misconduct during the grand jury proceedings, and assumed, *arguendo*, that the basis for that

claim - that the lab reports were uncertified - was true.  The trial court concluded, however, that

Petitioner's subsequent conviction after trial rendered his claims regarding sufficiency of the

evidence presented to the grand jury foreclosed, and that in light of other evidence presented,

there was no jurisdictional defect.  Dkt. No. 6, Ex. 22 at 2-3.  The Appellate Division affirmed.

Lanza,749 N.Y.S.2d at 621 (rejecting Petitioner's remaining claims not otherwise specifically

discussed in its decision).  The state court's rejection of this claim was not an unreasonable

application of clearly established Supreme Court precedent.  See, e.g., Mechanik, 475 U.S. at 70

(alleged errors during grand jury proceedings rendered harmless by the defendant's subsequent

conviction by a jury).

Finally, Petitioner is generally correct that submissions by *pro se* litigants must be held "to less stringent standards than formal pleadings" drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 9 (1980); see McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a reviewing court must read *pro se* submissions "liberally and interpret them 'to raise the strongest arguments that they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); Taylor v. Poole, 538 F. Supp. 2d 612, 618 (S.D.N.Y. 2008)(same).  There is no indication, however, that the trial court here failed to consider Petitioner's *pro se* status or that his status affected the trial court's decision.

For all of the foregoing reasons, Ground Two of the petition is dismissed.

**E.      Sufficiency of the evidence**

Petitioner next argues that there was insufficient proof that the substance tested at the crime lab and admitted at trial was the same substance the police obtained from him due to "contrary weights and contrary physical descriptions."  Dkt. No. 1, Ground Three; Dkt. No. 10, Traverse, at 14-19.  Although Petitioner makes a conclusory assertion that the evidence should not have been admitted at trial due to defects in the chain of evidence, it appears that his main argument is that because of the alleged deficient chain of custody, there was insufficient proof as to the nature of the substance he sold to Deputy Guntert and that the evidence therefore cannot support the jury's finding that he sold crack cocaine.

To the extent that Petitioner challenges the admission into evidence of the crack cocaine based upon an alleged insufficient chain of custody, that claim fails.  Claims that the chain of custody was inadequate to permit the admission of evidence at trial generally present questions of state evidentiary law that are not amendable to habeas review.  See Estelle v. McGuire, 502 U.S.

-19-

62, 67-68 (1991) (reemphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" ); Allen v. Costello, No. 03 CV 4957, 2008 WL 89747, *3 (E.D.N.Y. Jan. 7, 2008) (claim that evidence was improperly admitted into evidence due to gaps in the chain of custody was a challenge to a state evidentiary ruling that did not result in a fundamentally unfair trial) (citations omitted)); Tirado v. Senkowski, 367 F. Supp. 2d 477, 487 (W.D.N.Y. 2005) (holding that the petitioner's "chain of custody argument presents a question of State evidentiary law that generally is not amendable to habeas review") (citation omitted).  Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right, and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice."  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998), cert. denied 525 U.S. 840 (1998) (quoting Dowling v.United States, 493 U.S. 342, 352 (1990)); see Rosario v. Kuhlman,839 F2d 819, 924 (2d Cir. 1988) (habeas relief may not be granted for erroneous evidentiary rulings unless it was "an error of constitutional dimension" that resulted in a fundamentally unfair trial); Jones v. Conway, 442 F. Supp. 2d 113, 130 (S.D.N.Y. 2006). Petitioner "bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude."  Sierra v. Burge, No. 06 Civ. 14432, 2007 WL 4218926 at *5 (S.D.N.Y. Nov. 30, 2007) (quoting Copes v. Shriver, No. 97-2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997) (citation omitted).  Petitioner has not met his burden because, as set forth below, the prosecutor established an adequate chain of custody and, as the Appellate Division concluded, there was no state evidentiary error.

     A petitioner who challenges a conviction on the sufficiency of the evidence bears a "very

heavy burden." United States v. Quattrone, 441 F.3d 153, 169 (2d Cir. 2006); Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. See Fiore v. White, 531 U.S. 225, 228-29 (2001); Jackson v. Virginia, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis in original).  A habeas petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; see also Schlup v. Delo, 513 U.S. 298, 323 n. 38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. Jackson, 443 U.S. at 319.[7]  "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" Ponnapula, 297 F.3d at 179 (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999), cert. denied 528 U.S. 1170 (2000)).

Under New York law, the state had to prove that Petitioner knowingly and unlawfully sold crack cocaine, a narcotic drug.  N.Y. PENAL LAW §220.30(1).  Here, the prosecution sought

---

[7]  The Jackson standard is clearly established federal law as determined by the Supreme Court.  See Huber v. Schriver, 140 F. Supp. 2d 265, 276 n. 5 (E.D.N.Y.2001) (citing Francis S., 221 F.3d at 114) (other citation omitted); see also Santana v. Kuhlmann, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y.2002).

to prove the identity of the substance sold to Deputy Guntert by establishing a chain of custody

for the substance, and by establishing that Crime Lab tests confirmed that the substance was

crack cocaine.  See, e.g., Archer v. Connell, No. 06-CV-2961, 2008 WL 434266, at *11

(E.D.N.Y. Feb. 14, 2008) (the authenticity of fungible, real evidence, such as crack cocaine, may

be established by a chain of custody that begins from the time the object came under the control

of the police to its admission at trial); People v. McGee, 399 N.E.2d 1177, 1183 (N.Y. 1979)

("Accuracy or authenticity is established by proof that the offered evidence is genuine and that

there has been no tampering with it.").

The Appellate Division rejected Petitioner's argument that a deficient chain of custody

rendered the evidence insufficient.  See Lanza, 749 N.Y.S.2d at 620-21. The court first noted that

Petitioner did not dispute that the "substance contained in the two exhibits admitted at trial was

the substance sold by him, as demonstrated by the undisputed testimony of the undercover officer

and Kane, and the forensic chemist testified that those two exhibits were the ones from which she

obtained the substance for testing." Id. at 620.  As the Appellate Division further found, the

evidence established that:

> [a]fter each sale, the undercover officer gave the substance to another member of
> the drug task force team, Frederick Kane, who placed the substance in a plastic
> evidence bag, labeled the bag and locked it in a task force safe. Kane thereafter
> removed the two evidence bags from the safe and transported them to the Crime
> Lab where he watched an evidence receiving technician weigh each bag and place
> them in separate, large plastic bags, which the technician then sealed and labeled.
>
> Although the technician did not testify, the record contains a certified copy of the
> Crime Lab receipt record for each of the two items of evidence delivered by Kane.
> According to the documents, both bags were secured in the Crime Lab vault. A
> forensic chemist employed at the Crime Lab testified that she retrieved the two
> bags from the vault and placed them in a locked box to which only she had access.
> Approximately two weeks later, she removed the bags from the locked box,
> opened them and took a small amount of material from each for testing.

-22-

Id. at  620.  The court concluded that "this evidence, including the certified Crime Lab record, was sufficient to establish a complete chain of custody."  Id.  Those findings, which are presumed to be correct, are supported by the record.  28 U.S.C. § 2254 (e)(1).  See Trial Tr. at R215-226, 232-33, 236-37, 246-49, 250-57, 258-83, 285-304, 310-22.

Petitioner nonetheless argues that the chain of custody is suspect because there were discrepancies in the physical descriptions and the weights of the items he sold to Deputy Guntert and those tested at the crime lab.  First, Petitioner alleges that crack cocaine and powder cocaine have different consistencies.  Dkt. No. 10, Traverse, at 18.  He asserts that since the Crime Lab reports do not refer to crack cocaine, but instead to "powder," the substances tested could not have been the same substances he sold to Deputy Guntert.  Id. at 17-19, Dkt. No. 1 at 6, Ground Three.  The Appellate Division explicitly rejected this argument, finding that "[r]egardless of the words used in the reports to describe the substance tested (which also included references to compressed powder), the chemical analysis of the substance revealed that it was in fact crack cocaine."  Lanza, 749 N.Y.S.2d at 620.  That finding is consistent with the testimony of the chemist, who stated that one of the three chemical tests performed on the items revealed a "fingerprint" of "cocaine freebase" which is "known in the street as crack."  Trial Tr. at R 269-70, 275.  The Appellate Division further ruled that "in light of the complete chain of custody proof," this discrepancy was relevant to the "weight of the evidence and not to its admissibility or legal sufficiency."  Lanza, 749 N.Y.S.2d at 620.

The Appellate Division reached the same conclusion with regard to Petitioner's claims that there were discrepancies in the weight of the items within the Crime Lab reports.  See Lanza, 749 N.Y.S.2d at 620 (holding that any weight discrepancies went "to the weight of the evidence

and not its admissibility or sufficiency.").  The Appellate Division noted that the weight

discrepancies were explained by Investigator Kane's description of the procedure used by the

receiving evidence technician.  Id. at 621.  Finally, the Appellate Division noted that Petitioner

argued to the jury that these discrepancies in description and weight "established that there must

have been a break in the chain of custody and that, therefore, the People failed to prove that the

substance sold by defendant was crack cocaine." Id. See Trial Tr. at R362-70.  As the Appellate

Division correctly pointed out, the jury was free to reject this argument and apparently did so.  Id.

Those determinations were not contrary to clearly established federal law.  United States v.

Morrison, 153 F.3d 34, 57 (2d Cir. 1998) ("Breaks in the chain of custody . . . bear . . . only

[upon] the weight of the evidence . . . ." ); United States v. Hon, 904 F.2d 803, 810 (2d Cir.

1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's

chain of custody proof were for the jury to evaluate in its consideration of the weight to be given

to the evidence.") (citations omitted)); Linares v. People of the State of New York, No. 04 Civ.

2973, 2008 WL 2115231, at *4 (S.D.N.Y. May 14, 2008) ("Any deficiency in the chain of

custody affects the weight of the evidence, not its admissibility."); Howard v. Keane, No. CV-91-

0723, 1991 WL 352488, *2 (E.D.N.Y. Dec. 9, 1991) (finding chain-of-custody issue not

cognizable on habeas review and without merit; whether the packets introduced at the

petitioner's trial and analyzed as cocaine were the packets seized was a jury question).

     In sum, a reasonable jury could have concluded that the prosecution established a

complete chain of custody for the crack cocaine, or, at the very least, could have been reasonably

assured of the identity and unchanged condition of the crack cocaine, and that Petitioner was the

person who sold it to Deputy Guntert.  This claim is dismissed.

**F.**     **Trial Court Errors Deprived Petitioner of a Fair Trial**

Petitioner next asserts, as he did on direct appeal, that the trial court committed several

errors that deprived him of a fair trial.  Specifically, Petitioner contends that the trial court: (1)

improperly curtailed cross-examination regarding breaks in the chain of custody; (2) improperly

created a "false scenario" for the chain of evidence by asking leading questions of Deputy

Guntert regarding the time that elapsed between the sale and her meeting with Investigator Kane;

and (3) failed to give a requested jury instruction on the chain of evidence.  Petitioner further

asserts that the trial court's failure to give the requested instruction, coupled with its alleged

erroneous instruction to disregard Petitioner's evidence, worked "in tandem" to "misinform and

deceive the jury."  Dkt. No. 1, at 6, Ground 4; Traverse, 15-22.  The Appellate Division's

rejection of these claims, Lanza, 749 N.Y.S.2d at 621 (stating that the "remaining arguments, . . .

have been considered and rejected."), was not contrary to or an unreasonable application of

clearly established Supreme Court precedent.

**1.**     **Improperly Restricted Cross-Examination:**

A defendant's Sixth Amendment right to confront witnesses is guaranteed in both federal

and state criminal proceedings.  Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986); Pointer v.

Texas, 380 U.S. 400 (1965).  The right to cross-examination is not, however, absolute, and a trial

court may place reasonable limits on a defense attorney's cross-examination of a prosecution

witness "based on concerns about, among other things, harassment, prejudice, confusion of the

issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Young

v. McGinnis, 411 F. Supp. 2d 278, 302 (E.D.N.Y. 2006) (quoting Van Arsdall, 475 U.S. at 679

(citations omitted)).  "Generally speaking, the Confrontation Clause guarantees an *opportunity*

-25-

for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original).  Cross-examination is not improperly curtailed if  "the jury is in possession of facts sufficient to make a 'discriminating appraisal' of the particular witness's credibility." United States v. Roldan-Zapata, 916 F.2d 795, 806 (2d Cir. 1990) (quoting United States v. Singh, 628 F.2d 758, 763 (2d Cir.1980), cert. denied 499 U.S. 940 (1991)); see Howard v. Walker, 406 F.3d 114, 129 (2d Cir. 2005) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).

Here, Petitioner's right to cross-examination regarding the chain of evidence was not improperly curtailed by the trial court's rulings.  Defense counsel was able to question Investigator Kane, Deputy Guntert and the chemist extensively about: (1) the identity of the substance, including the differences between crack cocaine and powder cocaine; (2) the chain of custody, including whether the crack cocaine admitted into evidence at trial was in the same condition as when Kane saw it on March 17 and March 19; (3) whether other drug transactions were conducted during the same time frame; and (4) whether other, unrelated evidence was transported to the Crime Lab on the same day as the crack cocaine Petitioner sold to Guntert. Trial Tr. at R250-54, 277-83, 307-320.  Counsel elicited evidence that powder cocaine has to be cooked in order to turn into crack cocaine, and that the evidence submitted to the Crime Lab for testing, and later admitted at trial, was in hard pieces.  Id. at R251-52.  Counsel also admitted two Crime Lab reports into evidence that contained references to the items as "powder."  Id. at R278-79, 281.  Finally, counsel elicited testimony from Deputy Guntert that she did not purchase powder cocaine from Petitioner.  Id. at R310.  While the trial court sustained objections to

-26-

questions concerning what substance is cooked with cocaine in order to produce crack cocaine, questions regarding when Guntert became a police officer,[8] and questions regarding whether the informant was a drug dealer or a drug user[9] (see Trial Tr. at R250, 308, 312), those rulings do not appear to have interfered with counsel's ability to challenge the chain of custody.  On the record before this Court, no violation of Petitioner's Sixth Amendment rights has occurred, and this ground is denied.

2.   <strong>"False scenario" created by the trial court's questioning of Guntert</strong>

Petitioner also claims that the trial court interrupted the testimony of Deputy Guntert, questioned her itself, and "formed a false scenario" regarding the time frame during which she turned the cocaine over to Investigator Kane.  Dkt. No. 1 at Ground Four.

A trial court's actions, including the intervention in the conduct of the trial and questioning of witnesses, will not warrant habeas relief unless it is so severe as to "entirely deny the petitioner the fundamentally fair trial guaranteed him under Due Process Clause."  Messa v. Artus, No. 04-CV-2724, 2006 WL 3370438, at *5 (E.D.N.Y. Nov. 20, 2006) (citing Daye v. Attorney General, 712 F.2d 1566, 1571 (2d Cir. 1983), cert. denied 464 U.S. 1048 (1983).  As the Second Circuit has noted, a "trial is not rendered constitutionally unfair every time a trial

---

[8] Defense counsel asked Guntert when she became a police officer, and she replied "August of 1998."  Trial Tr. at R307.  Counsel asked Guntert if she remembered testifying at grand jury that she "became a police officer May 8th of 1999," and further stated, "It might just be a typo.  I honestly don't know."  Id. at R308.  The court sustained the prosecutor's objection to the question, noting that "since it might be a typo and is not consistent with what has been related by the witness as to her police experience, I think counsel first needs to satisfy themselves as to whether there may have been as defense counsel states possibly a typo."  Id.  Counsel did not further object to this ruling or ask follow-up questions on this point.  Id.

[9] The trial court ruled that counsel could, however, inquire into the conduct of each drug transaction and the arrangements leading to the transactions.  Trial Tr. at R312.

judge asks a question obviously intended to permit a witness to emphasize testimony helpful to the prosecution or clearly designed to challenge testimony favorable to the defense." Daye, 712 F.2d at 1572. Rather, a judge's participation in the questioning of witnesses will result in reversal of a conviction only when the court's conduct "destroy[s] the impartial, judicious, and, above all, responsible . . . courtroom atmosphere in which guilt or innocence [must] be soberly and fairly tested." United States v. Nazzaro, 472 F.2d 302, 309-11 (2d Cir.1973) (quotations omitted); see also Jones v. Donnelly, 487 F. Supp. 2d 403, 410-11 (S.D.N.Y. 2007) ("it is abundantly clear that only infrequently does intervention by a trial judge rise to the level of a due process violation. . . . A trial judge in a criminal trial . . . should take part where necessary to clarify testimony and assist the jury in understanding the evidence.") (quoting Gayle v. Scully, 779 F.2d 802, 806 (2d Cir.1985), cert. denied 479 U.S. 838 (1986) (citations omitted)).

Here, the trial court's questioning was well within constitutionally permissible bounds. During his examination of Deputy Guntert, defense counsel asked whether she conducted any drug transactions between the time Petitioner left the parking lot and the time she met with Investigator Kane to turn over the purchased crack cocaine. Trial Tr. at R314-16. The trial court initially sustained the People's objection to these questions, but ultimately permitted it, stating that it "did not fully comprehend that you were inquiring into that exceedingly minute time frame as I understand it to be." Trial Tr. at R316. The court then asked Guntert several questions, which apparently are the subject of Petitioner's complaint:

> **The Court**: On March 17th of 1999 as I understand your testimony it includes that you purchased what you have testified was crack cocaine from the defendant; is that true?
>
> **The Witness**: Yes, Sir.

**The Court**: And that's subsequent to your making the purchase, as you've testified, on March 17th of 1999 then very shortly thereafter, as you testified, that very same day, really just a few minutes thereafter, you turned over what you had purchased to Investigator Kane, is that correct?

**The Witness**: Yes, Sir.

**The Court**: And in between your making the purchase on the 17th of March as you've testified and turning it over that same day a few minutes later to Investigator Kane, as you testified, did you have any other drug purchase with any other person?

**The Witness**: No, Sir.

**The Court**: And on March 19th of 1999 as I recollect your testimony you purchased, as you testified, crack cocaine, as you testified, from this defendant, as you testified, is that correct?

**The Witness**: Yes, Sir.

**The Court**: And then shortly after making the purchase that very same day and a few minutes thereafter you turned over what you purchased to Investigator Kane, is that what you testified?

**The Witness**: Yes, Sir.

**The Court**: And in between you making the purchase on March 19th and the turning over to Investigator Kane a few minutes later that same day as you've testified did you have any other drug transaction with any other person?

**The Witness**: No, Sir.

Trial Tr. at R316-17.  According to Petitioner, this questioning introduced facts not in evidence -

i.e., the short time frame between the purchase of the drugs and their surrender to Investigator

Kane, and that these questions led Guntert to falsely testify that she turned the drugs over to Kane

within two minutes.  Dkt. No. 10, Traverse, at 14-15, 20.  Petitioner's challenge to this time

frame appears to be based in part upon his assertion that earlier testimony by Investigator Kane

established that Guntert turned the drugs over to him after she "went back to the Sheriff's

-29-

Department on the other side of town." Traverse at 14. The record, however, does not support this assertion. Investigator Kane testified that after each purchase, he and Guntert met at predetermined locations. Trial Tr. at R224, 246. The actual location was not disclosed. Id.

Moreover, defense counsel, and not the court, asked Guntert what time frame elapsed between each purchase and the subsequent meetings with Investigator Kane. Deputy Guntert responded that the time frame was "just a matter of minutes," or approximately "two to three minutes." Trial Tr. at R318. The trial court then asked questions designed to clarify whether this time frame of "approximately two or three minutes" was distinct from the length of time each drug transaction took. Id. at R318-20. Guntert confirmed that the time frame was different from the six-minute transaction on March 17 and the five-minute transaction on March 19. Id. at R319-20. Thus, while the trial court asked follow-up questions regarding the time frame, the court did not "create" or suggest it.

This limited intervention by the trial court was not significant and adverse to such a substantial degree that it exceeded constitutional limits. See, e.g., Gayle, 779 F.2d at 807 (stating that trial court's questioning did not exceed constitutional bounds despite the fact that the trial transcript revealed "that frequently statements were made by the trial judge which may be described as caustic and sometimes sarcastic [in addition to comments that] were gratuitous and might have been better left unsaid"); Johnson v. Scully, 727 F.2d 222, 225-227 (2d Cir.1984) (finding trial was not unfair despite conceding that the trial court's actions were "troubling" where trial court asked prosecution witness to repeat damaging testimony and questioned the defendant's theory of the case); Rosario v. Scully, 679 F. Supp. 384, 387 (S.D.N.Y. 1988) ("although the trial judge's conduct may have impaired the ability of both prosecution and

-30-

defense counsel to try the case as they wished, the overall conduct of the trial was not such that 'public confidence in the impartial administration of justice was seriously at risk.'")(quoting Daye, 712 F.2d at 1572).  The trial court's direct questioning of Deputy Guntert did not violate Petitioner's due process right to a fair trial.

### 3.    Jury instructions

Petitioner next argues that the trial court erred when it refused to instruct the jury that the prosecutor had to prove the identity of the substance he sold to Deputy Guntert by establishing a chain of custody beyond a reasonable doubt.  Dkt. No. 1 at 6, Ground 4; Dkt. No. 10, Traverse, at 21; see Dkt. No. 6, Ex. 24, App. Br., at 14-15.  Petitioner also claims that the failure to give that instruction, coupled with an erroneous instruction that Petitioner did not present evidence in this case, served to mislead the jury.  Id.

The adequacy of a state court's jury instructions is generally a matter of state law.  Cupp v. Naughten, 414 U.S. 141, 146 (1973).  Habeas relief requires a petitioner to base his claims on a violation of the federal Constitution, and Petitioner must therefore show that the trial court's failure to give a certain jury instruction violated a right guaranteed to him by the Fourteenth Amendment.  Id. at 146.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."  Foss v. Graham, No. 01-CV-420, 2007 WL 2071699, at *12 (N.D.N.Y. Jul. 17, 2007) (Hurd, J., adopting Report - Recommendation of Bianchini, M.J.) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).  On collateral review of a claim that a jury instruction was erroneous, the Supreme Court has instructed that "[t]he only question . . .is 'whether the ailing instruction by

itself so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (quoting Cupp, 414 U.S. at 147).  A habeas petitioner carries an "especially heavy" burden in order to succeed on a claim that a jury instruction was erroneously refused because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  Henderson, 431 U.S. at 155. See Carroll v. Hoke, 695 F. Supp. 1435, 1437 (E.D.N.Y.1988) (noting that standard on habeas review is particularly rigid where claim of prejudice stems from failure to give an instruction), aff'd without op., 880 F.2d 1318 (2d Cir.1989).  A jury charge violates the federal constitution only if there is a reasonable likelihood that the jury understood the instructions to allow them to convict even if the government has not established every element of the charged offense beyond a reasonable doubt.  Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995) (citing Victor v. Nebraska, 511 U.S. 1, 5 (1994)).

When deciding whether the evidence requires a jury instruction under state law, district courts must defer to state court interpretations of its own laws as long as the state court's interpretation is constitutional.  Davis v. Strack, 270 F.3d 111, 123 n. 4 (2d Cir. 2001).  To find that the failure to give a jury instruction on a particular defense violated a petitioner's due process rights, "a court must first find that the habeas petitioner was 'erroneously deprived of a jury instruction to which he was entitled under state law.'"  Graham v. Lape, 476 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (quoting Davis, 270 F.3d at 123).  If so, the court must then determine whether the failure to give the requested charge was so harmful as to make the conviction unfair.  Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005); Rustici v. Philips, 497 F. Supp. 2d 452, 470 (E.D.N.Y. 2007).  The jury charge must be considered in the context of the overall charge

given and the evidence presented at trial.  Munoz v. Riley, No. 91-CV-2730, 1996 WL 575943, at *3 (E.D.N.Y.  Sept. 24, 1996) (citing Cupp, 414 U.S. at 146-47.)

Here, defense counsel asked the court to instruct the jury that "the People must prove that the items sold or the item obtained by Deputy Guntert was the same item delivered to Investigator Kane, which was the same item delivered to the lab technician and which is the same item that tested positive for cocaine."  Trial Tr. at R347.  The trial court denied the request, ruling that no such charge was required, nor was it appropriate to give "some specific charge that is over and above the particular elements of the crime as defined by law that some particular evidentiary matter itself has to be, as it were, proven beyond a reasonable doubt."  Trial Tr. at R347.  The court reminded counsel that he was free to make that argument to the jury.  Id. at 347-48.  When counsel renewed his objection, the trial court further explained that it would not parse out "individual items of evidence" and give specific instructions "that certain items of evidence somehow have to be proved beyond a reasonable doubt."  Id. at R349.  The court further noted that it was the elements of the crime, and not specific items of evidence, that had to be proven beyond a reasonable doubt, and that counsel was free to argue his evidentiary points to the jury.  Id. at R350.

This Court has found no authority - and Petitioner has cited none- to suggest that a defendant is entitled under state law to a jury instruction that each link in a chain of custody of evidence must be established beyond a reasonable doubt.  To the contrary, while "the jury must be instructed, as they were here, that the People are required to prove every element of every offense beyond a reasonable doubt, there is no requirement that they be instructed that every fact established at trial must be proven beyond a reasonable doubt."  People v. Foss, 700 N.Y.S.2d

499, 503 (N.Y. App. Div., 3d Dep't. 1999), <u>lv</u>. <u>denied</u> 731 N.E.2d 620 (N.Y. 2000), <u>habeas</u>

<u>corpus</u> <u>denied</u> <u>sub</u> <u>nom</u> <u>Foss v. Graham</u>, No. 01-CV-420, 2007 WL 2071699 (N.D.N.Y. Jul. 17,

2007) (Hurd, J., adopting Report - Recommendation of Bianchini, M.J.).  <u>See</u> <u>Young v.</u>

<u>McGinnis</u>, 411 F. Supp. 2d 278, 310-11 (E.D.N.Y. 2006) ("Because the charge conveyed to the

jurors the proper standard of proof, there was no need for the court to charge the jurors

specifically that the State had to prove beyond a reasonable doubt that petitioner had made the

statements attributed to him."); <u>People v. Guidici</u>, 3 N.E. 493, 496 (N.Y. 1885) ("The rule

requiring proof beyond a reasonable doubt does not require that the jury be satisfied beyond a

reasonable doubt of each separate link in the chain of evidence, isolated from its connection with

the other testimony. It is sufficient, taking the testimony all together, if the jury are satisfied

beyond a reasonable doubt that the defendant is guilty.").  Accordingly, Petitioner was not

erroneously deprived of a jury instruction under state law, and the trial court's refusal to give his

requested instruction did not deprive Petitioner of due process.

 Petitioner correctly notes that the trial court instructed the jury that it could not draw any

"negative inference whatsoever by reason of his not testifying in this case or not introducing any

evidence in this case."  <u>See</u> Trial Tr. at R383.  The court also instructed them, however, that all

items of evidence that were "actually received into evidence during the course of the trial"

constitute evidence and "are to be considered by you and used as your foundation for your

deliberations."  <u>Id.</u> at 381.  That would include, by definition, the two written reports

(Defendant's Exhibits A and B) Petitioner introduced into evidence during the cross-examination

of the chemist and "received in evidence" by the court.  Trial Tr. at R276-78.

 Finally, viewing the jury charge as a whole, there does not exist a reasonable likelihood

that the jury applied an incorrect standard when determining Petitioner's guilt.  Cupp, 414 U.S. at

147; Beverly v. Walker, 118 F.3d 900, 902-03 (2d Cir. 1996), cert. denied 522 U.S. 883 (1997).

The due process clause requires that a criminal defendant be convicted only if the prosecution

proves "beyond a reasonable doubt all of the elements included in the definition of the offense of

which the defendant is charged."  Patterson v. New York, 432 U.S. 197, 210 (1977).  The jury

must be instructed accordingly.  See United States v. Desimone, 119 F.3d 217, 227 (2d Cir.1997)

("[J]ury instructions must be viewed in their entirety to ensure that the instructions, read as a

whole, correctly convey the reasonable-doubt concept to the jury."), cert. denied 525 U.S. 874

(1998).

      The trial court instructed the jury that "it is the obligation of the prosecution to establish

beyond a reasonable doubt each and every element of a particular alleged crime and to do so

from evidence in the case."  Trial Tr. at R383-84.  The court further instructed the jury that if it

concluded that the prosecution failed to establish "any one or more" of the elements of a

particular crime, it must return a verdict of not guilty.  Id. at R384-85.  The court instructed the

jury extensively on the meaning of reasonable doubt, including that a "doubt of defendant's guilt

to be a reasonable doubt must arise either from the nature and quality of the evidence in the case

or from the lack or insufficiency of the evidence in the case."  Id. at R387-90.  It then told the

jury that in order to find Petitioner guilty, it had to find (1) that he knowingly and unlawfully sold

items received into evidence as People's Exhibits one and two and "testified to by prosecution

witnesses as containing cocaine,"  Trial Tr. at R392-93, 401, and (2) that the People established

beyond a reasonable doubt that the items sold were cocaine.  Id. at 393.  Viewed as a whole, the

trial court's charge was proper, and did not deprive Petitioner of a fair trial.

####      4.      __Admission of audio and videotapes__

Petitioner asserts that the audio and video tapes of the undercover drug buys should not

have been admitted in evidence.  Dkt. No. 10, Traverse, at 20.  Evidentiary errors deprive a

petitioner of due process only when the evidence "is so extremely unfair that its admission

violates fundamental conceptions of justice." Dowling v. United States, 493 U.S. 342, 352

(1990) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)).  To meet his burden,

Petitioner must show that the challenged evidence, in light of the entire record, was "sufficiently

material to provide the basis for conviction or to remove a reasonable doubt that would have

existed on the record without it." Brumfield, 297 F. Supp. 2d at 619 (quoting Collins v. Scully,

755 F.2d 16, 19 (2d Cir. 1985)).  Petitioner has not met his burden.

Under New York law, the decision whether to admit audio and video tapes rests within

the sound discretion of the trial court.  See People v. Lubow, 272 N.E.2d 331 (N.Y. 1971);

People v. Rivera, 691 N.Y.S.2d 4, 9 (N.Y. App. Div., 1st Dep't 1999), aff'd 729 N.E.2d 339

(N.Y. 2000).  "If a recording is so unintelligible that the jury will be forced to speculate as to its

contents, it must be excluded from evidence." Rivera, 691 N.Y.S.2d at 9.  If, however, the

likelihood of speculation is eliminated, the recording may be admissible even if it contains

inaudible or unviewable portions.  People v. Morris, 819 N.Y.S.2d 359, 361 (N.Y. App. Div., 3d

Dep't 2006), lv. denied 857 N.E.2d 1144 (N.Y. 2006); Rivera, 691 N.Y.S.2d at 9.

Here, the court ruled that the tapes were "sufficiently intact and audible to go to a jury."

Id. at R155.  The court further noted that there were no mechanical errors or gaps in the

recordings, that they accurately reflected the depicted events as they unfolded, and that the

entirety of each transaction was recorded from "beginning to end." Id. at R153-54.  The court

found that the video clarity was "excellent" and that, to the extent that there were audibility problems with the videotape, the audio tape of the same transaction was "quite audible" rendering audibility as to the videotape moot.  Id. at R154.  The trial court did not abuse its discretion in admitting the audio and video tapes into evidence.  Rivera, 691 N.Y.S.2d at 9.

Even if the tapes were improperly admitted, this Court agrees with the Appellate Division's determination that "[i]n light of the testimony of the undercover officer regarding her participation in the drug transactions, and considering the weight and nature of the proof of defendant's guilt without the audiotapes of the transactions or the transcripts of those tapes," Lanza, 749 N.Y.S.2d at 621, the admission of the tapes was harmless and did not have a substantial and injurious effect on the jury's verdict.  Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (a constitutional error in a state-court criminal trial is harmless as long as it did not have a "substantial and injurious effect" on the jury's verdict, and stating that this standard of review applies in section 2254 proceedings regardless of "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard" enunciated in Chapman v. California, 386 U.S. 18 (1967)) (citing Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)).  See Rice v. Senkowski, No. 04-CV-335, 2007 WL 2789504, at *6 (N.D.N.Y. Sept. 24, 2007) (Kahn, D.J. adopting Report-Recommendation of Peebles, M.J.); Timberlake v. Taylor, No. 04-CV-2846, 2008 WL 756160, at *3 (S.D.N.Y. Mar. 20, 2008); Toland v. Walsh, No. 04-CV-773, 2008 WL 65583, at *18-19 (N.D.N.Y. Jan. 4, 2008). This claim is thus dismissed.

## III.   CONCLUSION

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for

the reasons stated herein, it is hereby

ORDERED, that Lanza's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED**

**and DISMISSED in its entirety;** and it is further

ORDERED, that no Certificate of Appealability shall issue with regard to any of Lanza's

claims; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:         September 03, 2008
               Albany, New York

Lawrence E. Kahn
U.S. District Judge